IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROADGET BUSINESS PTE. LTD.**, a private limited company organized in the country of Singapore, <br><br> Plaintiff, <br><br> v. <br><br> **THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO** <br><br> Defendants. | **CIVIL ACTION NO. 1:24-cv-00115** <br><br> Judge: Hon. Elaine E. Bucklo |

**MOTION FOR LEAVE TO APPEAR
AND TO FILE AN AMICUS CURIAE BRIEF**

1

This motion for leave to appear and to file an amicus curiae brief is submitted by William W. Flachsbart of the law firm Dunlap, Bennett & Ludwig (the "Firm"). The Firm currently represents a merchant who sells products on the Temu.com online marketplace and was named as defendants in *Roadget Business PTE. LTD.*, No. 1:23-cv-16262 (the "16262 Action"). The 16262 Action involves similar copyright claims asserted by the same Plaintiff, nearly identical requests for sealed *ex parte* TRO relief, and claims asserted against a large group of merchants who sell products on the Temu.com online marketplace. In view of the Firm's engagements with merchants selling on Temu, the Firm believes it is likely to represent some of the merchant defendants in this action once their identities have been unsealed.

Based on the Firm's above-described interest in this action, it requests leave to appear at the January 17, 2023 hearing on Plaintiff's motions for issuance of TROs, and the Firm also offers the following relevant *amicus curiae* commentary based on its experience and investigation in the similar 16262 Action, which the Firm believes will assist the Court in its decision in this action. *See Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2023 U.S. Dist. LEXIS 121362, at *15 (N.D. Ill. July 14, 2023) ("Federal courts have discretion to permit amicus curiae briefs.").

In the 16262 Action, Plaintiff Roadget Business PTE. LTD., just like in this action, accuses dozens of merchants of violating Plaintiff's alleged copyrights. Following the same pattern as this case, Plaintiff sought and obtained *ex parte* TRO relief—filed under seal—to indiscriminately freeze **all of the merchants' financial accounts** based on the incorrect and speculative premise that the merchant defendants allegedly cannot be contacted and would likely abscond with any U.S.-based assets if they came to learn of the proceedings before a TRO issues. Plaintiff has asserted the same relief here (and on the same grounds) as it did in the 16262 Action. These

2

stereotype-drive allegations are based solely on the foreign status of the merchant. They are not only speculative and should be disregarded to that extent, but they are also demonstrably incorrect.

First, for nearly all merchants on the Temu platform, Plaintiff can easily obtain the merchants' business address through the merchants' online storefront on Temu.com. The merchants on this platform are not "anonymous" as Plaintiff asserts. And Plaintiff's assertion supporting the alternate-service request in both the 16262 Action and this case are the same: "***on information and belief***, Defendants ***may have*** provided false names and postal addresses[.]" Dkt. No. 10 at 12 (emphasis added). This is nothing but speculation and is not substantiated in any way. The upshot is that every aspect of Plaintiff's purported need to act with urgency, secrecy, and without opposition or other procedural safeguards is based on unsubstantiated and speculative assertions: A series of "on information and belief" allegations followed by a speculative "***could***" or "***may***." *E.g.*, ECF No. 10 at 7 (speculating that defendants "***could*** . . . tak[e] their money" outside the U.S.). In addition, Plaintiff's speculative premise of merchants purportedly absconding "never to be seen again" is belied by the fact that nearly all of the Temu-platform merchants have retained counsel in the 16262 Action and are actively preparing defenses to Plaintiff's claims – defenses which they could have already presented had they been served outside of the sealed *ex parte* proceedings. The secrecy procedures are thus unduly delaying these cases and are against the interests of justice. There is no reason to believe that the similarly situated merchant defendants in this case would do anything less if they were not unfairly hamstrung from any ability to defend themselves by the *ex parte* and sealed nature of these sealed proceedings.[1]

---

[1] Plaintiff itself has vehemently—and correctly—protested this type of litigation vehicle in a case in which it was the victim of an improper sealed *ex parte* TRO. *See Wejie Weng v. DOES 1-35, Roadget Business PTE. LTD., et al*, No. 1:22-cv-07082, Dkt. No. 33 at 15 (S.D.N.Y. Jan. 6, 2023) (Roadget's motion to dissolve TRO, arguing: "Plaintiff has [] presented no evidence that Defendants have secreted or diverted assets, or that there is even a possibility that Defendants will divert their sales proceeds before

Further, this case and the 16262 Action present nearly identical fundamental deficiencies on threshold matters, such as personal jurisdiction and improper joinder. The Court should consider these deficiencies *sua sponte* even without the benefit of an appearing defendant's briefing. Based on the available record in this case it appears that Plaintiff has not shown that ***any*** of the merchant defendants—let alone ***all of them***—have sold any products in Illinois, which is a prerequisite for personal jurisdiction in this type of case. *See Roblox Corp. v. Bigfinz*, No. 1:23-cv-05346, 2023 U.S. Dist. LEXIS 212147, at *1–2 (N.D. Ill. Nov. 29, 2023) (collecting cases) ("Courts in this District, however, agree that in infringement cases like this the online retailer generally must have sold at least one product in Illinois for personal jurisdiction to exist here."). And Plaintiff has not alleged any basis to support Rule 20 joinder across dozens of unaffiliated and independently operating merchants. *See H-D U.S.A., LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-cv-01041, 2021 U.S. Dist. LEXIS 37600, at *5 (N.D. Ill. Mar. 1, 2021) ("Courts within this District have held that it is not enough for a plaintiff to simply allege that multiple defendants have infringed the same [IP rights] to meet Rule 20's requirements.").

There are also several other challenges the merchant defendants in the 16262 Action will raise that will likely be present in this action based on the presence of the nearly identical positions and duplicated briefing and declarations submitted by Plaintiff. For example, as in the 16262 Action, while Plaintiff claims lost sales and reputational harm as the basis for irreparable injury, Plaintiff made no attempt to establish either. Plaintiff simply asserts in briefing that the alleged infringement "will cause Roadget irreparable harm by damaging its reputation and diverting customers." Dkt. No. 10 at 7. But this conclusory and speculative assertion—devoid of any facts or substantiation—does not warrant the extraordinary remedy of immediate injunctive relief. *See*

---

this matter concludes. Unless plaintiff produces evidence of improper asset diversion or secretion, at least the asset freeze order should not continue.").

4

*M1 Holdings Inc. v. Members 1st Fed. Credit Union*, No. 22-cv-01162, 2022 U.S. Dist. LEXIS 220434, at *34 (N.D. Ill. Dec. 7, 2022) (no irreparable harm where plaintiff "claim[ed] it will suffer damage to its reputation and goodwill but provide[d] no . . . evidence that [defendant's] reputation or quality is inferior such that confusion would negatively reflect on [plaintiff]" and finding plaintiff "provide[d] no evidence that it has or is likely to lose customers or revenue due to [defendant's] use of the M1 Marks").[2]

Lastly, this case also likely presents nearly identical challenges to the overly broad asset freeze being sought. In the 16262 Action, Plaintiff is seeking an asset freeze on **all of the merchants' financial accounts**—causing the merchants to miss payroll and lay off their staff due to this disruption—despite the fact that the asset freezes for nearly all merchants grossly exceed the actual sale of the accused product by several multiples. However, in the interim—until they are able to learn of the case through notice (after unsealing), retain effective counsel, coordinate investigation of the claims, prepare and file an opposition, and await a decision from the court— their ***entire operating funds*** are frozen, thus potentially causing missed payroll, layoffs, and other irreparable harm to their businesses.

Comparing Plaintiff's serious lack of any showing of irreparable injury to the catastrophic harm that an indiscriminate asset freeze invariably causes to any merchant's businesses, employees, and families, the balance of the equities clearly warrants denial of the injunctive relief sought here. This Court should not grant Plaintiff's proposed TRO while depriving the merchants

---

[2] Plaintiff seems to agree with this, as Plaintiff made this same argument when it was the victim of an improper sealed *ex parte* TRO in the *Weng* case. *See Weng v. DOES 1-35, Roadget Business PTE. LTD., et al*, No. 1:22-cv-07082, Dkt. No. 33 at 15 (S.D.N.Y. Jan. 6, 2023) (Roadget's motion to dissolve TRO: "While Plaintiff is correct that the loss of customer goodwill and reputation could constitute irreparable harm in some cases, he has not shown that his reputation has been damaged with the requisite specificity. For example, Plaintiff provides no evidence of any customer reviews or complaints that Defendants' products were of inferior quality.").

of even knowing they are targets and preventing them from appearing to defend themselves, certainly not without a more substantive showing by Plaintiff.

The Firm looks forward to assisting the Court by answering any questions the Court may have on the issues raised in this brief. The Firm earnestly believes in the effectiveness and propriety of due process litigation procedures developed over the more than two century history of the Republic. We urge the Court not to cast aside nearly all of them on the self-serving and speculative allegations of one private litigant.

Date: January 16, 2024					Respectfully submitted,

*/s/ William W. Flachsbart*
William W. Flachsbart
DUNLAP BENNETT & LUDWIG PLLC
333 N. Michigan Ave.; Suite 2700
Chicago, IL 60601
P: (312) 551-9500
F: (312) 551-9501
wflachsbart@dbllawyers.com