**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., | |
| Plaintiff, | Case No.: 1:24-cv-115 |
| vs. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | **Judge Elaine E. Bucklo** |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO
<u>DISSOLVE OR MODIFY TEMPORARY RESTRAINING ORDER</u>**

## INTRODUCTION

Defendants have offered for sale virtually identical copies of Roadget's registered copyright without a license. They are willful copyright infringers—and they do not even try to claim otherwise; they merely object to the consequences of that infringement. But the asset freeze they challenge is commonplace in Schedule A cases, and this Court has the authority to impose it. The remainder of their arguments are little more than distractions from the fact of their infringement, which provide no basis to dissolve or modify the TRO.

## ARGUMENT

There is no serious dispute that Defendants' copied Roadget's copyrighted works. They attempt to evade the consequences of that infringement by raising an assortment of ancillary issues. For example, they contest personal jurisdiction, but as foreign infringers, they are subject to nationwide personal jurisdiction under Fed. R. Civ. P. 4(k)(2) regardless of how many infringing products they sold in Illinois. They ask this Court to revisit its order authorizing email service of process on the grounds that they are not anonymous, when other methods of service of process would have been impossible because they did not make their real names available to the public. They attempt to challenge the originality of Roadget's copyrighted designs by pointing to vaguely similar-looking designs in the public domain, which is not enough to overcome Roadget's presumptively valid copyright registrations. Defendants are anonymous foreign sellers, and a host of questions remain as to their identities and their collaboration with one another. Without injunctive relief for the pendency of this case, there is a real likelihood of dissipation of the profits that Roadget is entitled to disgorge.

I.  **This Court Has Personal Jurisdiction over These Foreign Defendants.**

As foreign infringers not subject to the jurisdiction of any state court, Defendants can be sued anywhere in the United States under Fed. R. Civ. P. 4(k)(2). Congress added Rule 4(k)(2) to

1

fill the loophole of foreign defendants escaping jurisdiction who "have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction"—precisely the situation we have here. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001), *as amended* (July 2, 2001). Under Rule 4(k)(2), Defendants cannot offer infringing products to customers across the United States and then evade U.S. courts by claiming their contacts with any one state are too scant.

Rule 4(k)(2) allows this Court to exercise jurisdiction over Defendants based on their aggregate contacts with the nation, not just Illinois, as long as (1) the claims are based on federal law, (2) no state court can exercise jurisdiction, (3) jurisdiction is consistent with U.S. laws, and (4) jurisdiction is consistent with the Constitution. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).

All four elements are satisfied here. The claim asserted is based on federal law (the Copyright Act). Nor can any state court exercise jurisdiction: If, as Defendants claim, they are not subject to suit in Illinois, they have also not indicated they would be subject to suit in any *other* jurisdiction. The burden rests on Defendants to find an alternate forum where they can be sued. *ISI Int'l, Inc.*, 256 F.3d at 552 ("If . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).") Jurisdiction is consistent with U.S. laws, because neither the Copyright Act nor another federal statute indicates jurisdiction would be improper. *Cent. States*, 230 F.3d at 941.

Fourth, the exercise of personal jurisdiction is consistent with the Constitution. This element applies the standard "minimum contacts" test, but as to the whole of the United States, not Illinois. The question is whether the defendant purposefully established minimum contacts

2

with the United States such that it should reasonably anticipate being haled into court here. *Cent. States*, 230 F.3d at 943; *see Shenzhen Wanfan Tech. Co. v. Orbital Structures Pty. Ltd.*, No. 23-CV-02330, 2024 WL 325339, at *5 (N.D. Ill. Jan. 29, 2024). The fact that Defendants sell their products in the United States—which they do not dispute—is easily enough to show minimum contacts with the nation as a whole. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-58 (7th Cir. 2010) (holding that an online retailer had minimum contacts with a forum because it maintained a website where residents of the forum could do business and sold to one resident of that forum); *Curry v. Revolution Lab'ys*, LLC, 949 F.3d 385, 399 (7th Cir. 2020).

Even if Rule 4(k)(2) did not apply, Defendants would still be subject to personal jurisdiction in Illinois. Here again, the Court can exercise jurisdiction if the defendant purposefully established minimum contacts with Illinois such that it should reasonably anticipate being haled into court, since it has purposefully availed itself of the privilege of conducting business in the forum. *Hemi Grp.*, 622 F.3d at 758.

Every one of Defendants' stores offers to ship infringing goods directly to Illinois. Sealed Dec. Deepa A. Chari Supp. Pl.'s Mot. TRO, ECF No. 14-2. This is more than a possibility of sales to Illinois—Defendants have taken purposeful action to reach out to Illinois consumers. Defendants rely on *Roblox Corp. v. Bigfinz*, No. 23 C 5346, 2023 WL 8258653 (N.D. Ill. Nov. 29, 2023), and *American Bridal & Prom Industry Ass'n v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, 192 F. Supp. 3d 924 (N.D. Ill. 2016), to claim that personal jurisdiction over foreign infringers requires confirmed sales. Mem. Supp. Defs.' Emergency Mot. Dissolve TRO ("Defs.' Mot."), at 7, ECF No. 31. But the defendant in *Roblox*, a domestic company, had never sold a single T-shirt in Illinois. 2023 WL 8258653, at *1. Defendants here

have proven no such thing. And the defendant in *American Bridal* did not offer shipping to Illinois. 192 F. Supp. 3d at 932. Defendants here do.

What's more, Defendants may well have sold their infringing products to Illinois residents—we do not yet have the facts. Defendants are conspicuously silent on that question. And the product links included in Schedule A to the Complaint are not the only products sold in Defendants' stores. They may well have infringed these copyrights—or other Roadget copyrights—on other apparel, racking up unaccounted-for sales of infringing goods across the United States and in Illinois. At this stage of litigation, without discovery into Defendants' sales by geographic location, requiring such a showing is premature. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002) (prior to an evidentiary hearing, "the party asserting personal jurisdiction need only make out a *prima facie* case of personal jurisdiction").

Defendants offer their infringing goods for sale across the United States and offer shipping to Illinois. They should not be permitted to escape jurisdiction in any one state based on a hypothetical argument that they *might* not have sold their infringing goods in Illinois.

**II.     Defendants Were Properly Served Electronically.**

Defendants claim they are "not anonymous," but their real names did not appear anywhere on their online storefronts at the time service of process was completed. Defendants' own motion confirms that fact. *See* Sealed Ex. B to Chen Decl., ECF No. 31-3 (showing screenshots of the "Store Information" pages for each seller, with real entity names absent). According to the instructions on the website of the Hague Conference, service of process on an entity requires not only the mailing address but the *identity* of the addressee.[1] Roadget cannot

---

[1] https://assets.hcch.net/docs/6700b8be-9a8e-4898-bc51-548a4a69d3df.pdf

4

request that the China Central Authority serve an entity without providing information about who that entity is, and Defendants demonstrably did not publicize that information.

In its January 17, 2024 Temporary Restraining Order, this Court ordered that "Roadget may provide notice of the proceedings in this case to Defendants . . . by sending an e-mail to any e-mail addresses provided for Defendants by third parties." ECF No. 20. There is no reason now to reconsider that Order, as the facts available to the Court and the parties have not changed.

Email service of process is proper pursuant to Fed. R. Civ. P. 4(f)(3), which allows service to foreign entities "by other means not prohibited by international agreement, as the court orders." The decision whether to allow alternative means of service of process is "committed to the sound discretion of the district court." *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018). The applicable international agreement, the Hague Convention, does not mention email service of process, and many courts have found that it does not prohibit email service of process. *Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) (collecting cases); *The Neck Hammock, Inc v. Danezen.com*, No. 2:20-CV-287-DAK-DBP, 2020 WL 6364598 (D. Utah Oct. 29, 2020) ("[T]he majority [of courts] have concluded that a country's objection to Article 10(a) [service by mail] does not equate to an objection to email service.")

Courts allow electronic service of process where a reasonable investigation did not uncover valid physical addresses. *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939 (S.D.N.Y. Sept. 30, 2018). And courts have found a reasonable investigation even where physical addresses were available. In *Hangzhou Chic*, 2021 WL 1222783, at *2, the court upheld email service of process even where the sellers had

5

physical address information on their websites, pointing to the epidemic of infringing goods sold online, the unambiguous nature of defendants' infringement, and the exigent circumstances justifying freezing defendants' assets. *Id.* "Time is of the essence with an injunction in place," the court pointed out, "so the Court authorized email service in order to provide [defendants] with notice as quickly as possible." *Id.*

Roadget performed the required reasonable investigation here by visiting each of Defendants' storefronts, closely examining their websites for contact information, and adding at least one of their products to a shopping cart for checkout. Decl. Deepa A. Chari Supp. Pl.'s Mot. TRO, ECF No. 14-2. The address information is difficult to find: it requires clicking the seller's avatar image, which does not look or behave like a link (for example, the mouse pointer does not change to a hand when hovering over it). Moreover, the mailing addresses on the Temu website are neither complete nor reliable. At the time Roadget viewed them, the address for Defendant 17 was missing entirely, showing only the words "Chinese Mainland." And because the addresses are live on the sellers' websites, they are subject to change. This morning, Roadget discovered that the address entries for 12 of the 17 Defendants, including many of those represented by counsel, had apparently been changed to add an entity name and detailed address that were not previously available. Roadget is uncertain whether certain detailed identifying information was added specifically to thwart Roadget's efforts to obtain email service of process; discovery is needed to understand what information became available and when. *See Hangzhou Chic*, 2021 WL 1222783, at *2 (pointing out that "it is not clear that [defendants] provided addresses on their Amazon websites at the time Plaintiffs filed their motion for email service").

Roadget submits that electronic service of process is appropriate in this case. Service of process by other methods "generally takes 1–2 years and is frequently unsuccessful," *Celgard,*

6

*LLC. v. Shenzen Senior Tech. Material Co.*, No. 3:20-CV-130-GCM, 2020 WL 2575561 (W.D.N.C. May 21, 2020), imperiling any remedy Roadget can secure for Defendants' infringement. But even if the Court were to conclude that service of process pursuant to the Hague Convention through the China Central Authority were required, the appropriate course would be to pursue such service, *not* to dissolve the TRO in the meantime. Indeed, the frequent delays in that process only underscore the need for interim relief to ensure Defendants are not permitted to use procedural delays to abscond with the fruits of their infringement.

**III.    Roadget's Copyrights Are Original, and Defendants' Designs Are Too Dissimilar to Quality as Prior Art.**

Originality requires only a "minimal degree of creativity." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). The threshold is low: as long as a work was independently created, it can be original even if it closely resembles other works. *Id.* The designs Defendants offer have some superficial similarities to Roadget's original copyrighted designs, but these are not enough to surmount the high bar of showing lack of originality—certainly not at this stage of the case As the Supreme Court has pointed out, "[t]he vast majority of works make the grade quite easily." *Id.* And originality is distinct from novelty: even when the work "closely resembles" other works, as long as it was not copied, it is original. *Id.*

The work Defendants compare to "Skull Gesture" is similar only in that it is a grinning skull with hands. The shape of the skull differs: in Roadget's design, the forehead is smaller, the nose is shaped differently, and the cheekbones are less distinct. In Defendants' design, the skull is wearing sunglasses, and there are lines on the forehead that do not appear in Roadget's original design. Defendants' design reflects a similar *idea*, but what is copyrighted is the *expression*, not the idea. *Feist*, at 350. Roadget has not asserted a copyright of the idea of a grinning skull with hands—such an idea would not be copyrightable. it has copyrighted this

7

specific arrangement of lines and colors, which is one of many manifestations of the idea of a grinning skull with hands. Similarly, the work Defendants compare to "Pumpkins 333345" merely depicts a similar idea: four fall-themed drinks in a row. The manifestation of that idea is different: in Roadget's original design, the first drink on the left has a handle and whipped cream in a specific configuration, as well as three pumpkins. Defendants' identified designs, by contrast, have a plastic cup with a straw on the far left, with no whipped cream. The same kinds of differences are evident for each of the four drinks. And the designs Defendants compare to "Eagle" are just as dissimilar from Roadget's original copyrighted design. For two of them, the wings are in a different configuration, pointed up rather than down. The claws, beak, and tail feathers are different shapes from Roadget's original. The lines of the design are completely different. Finally, for the "Play Game" design, none of Defendants' designs even appear to include the words "play" and "game" in any configuration.

      Whereas Defendants have failed to show copies of Roadget's original designs predating registration, Roadget has shown that Defendants *virtually exactly copied* Roadget's original designs on their apparel. One only needs to look at the designs to see that Defendants did not copy any of the designs that were already in the public domain: they copied Roadget's designs.

      The copyright certificates Roadget has already provided to the Court provide "prima facie evidence of the validity of the copyright," relieving the copyright owner of the burden of proving facts underlying validity. 17 U.S.C. § 410(c); *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012); *Carol Barnhart Inc. v. Econ. Cover Corp.*, 773 F.2d 411, 414 (2d Cir. 1985). Defendants infringed Roadget's registered copyrights, and they have failed to show any problem with the validity of the copyrights.

### IV. Irreparable Harm to Roadget Is Likely Absent a Temporary Restraining Order Because of the Serious Risk Defendants Will Dissipate Assets.

Because Defendants are small merchants based abroad who operate behind online aliases, they can easily abscond with the fruits of their infringement and reopen a new store under a new alias, leaving Roadget without a remedy and irreparably harmed. *See Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (explaining that a damages award may be inadequate if damages are "unobtainable from the defendant," and that harm that "cannot be prevented or fully rectified by the final judgment after trial" is irreparable). That concern is not speculative. It is the same real threat this Court confronts regularly in "Schedule A" cases, and these Defendants are no different from the parade of foreign online infringers in those cases.

Defendants can dissipate assets easily because, for one thing, they *are* anonymous: their real business names are different from their storefront aliases. To take just one example, the "S H Baby" alias is operated by "Foshan Qiqiao Childhood Clothing Co., Ltd." Defs.' Mot., Zhong Mingzhu Decl., ¶ 3, ECF No. 31-9. Those real business names are nowhere to be found on their storefronts, so that the infringing conduct is difficult to trace to the source. Defendants claim (in identical language) that they are not affiliated with other defendant storefronts. *See, e.g.*, Defs.' Mot., Li Sheng Decl., ¶ 13, ECF No. 31-8; Zhong Mingzhu Decl., ¶ 13, ECF No. 31-9; Liang Yingtao Decl., ¶ 13. But several of them, although presented as different stores online, appear to be owned by the same entity or entities. *See, e.g.*, Defs.' Mot., Decl. Zhong Mingzhu, ¶ 6, ECF No. 31-9; Zhong Mingjie Decl., ¶ 6, ECF No. 31-11 (one entity has six Temu stores under various aliases; another owns eight).

Defendants did not reveal their real identities to the Court, voluntarily or otherwise. Roadget only knows their names because the third party Temu provided seller data pursuant to a TRO. Without that initial injunctive relief, Defendants' infringement would be untraceable to

9

real entities, the extent of collaboration between the stores would be unknown, and Defendants could easily drop one of their many store names and pick up another that is not being sued.

And Defendants' identities and the extent of collaboration between them raise more questions than answers. If Defendants indeed operate independently from one another, why are they represented en masse by the same counsel? Counsel for Defendants also represent numerous defendants in another "Schedule A" case Roadget initiated in this Court. *See Roadget Bus. Pte. Ltd. v. Schedule A Defendants*, No. 23-cv-17036 (N.D. Ill. Dec. 22, 2023). In that other case, when Roadget received data from Temu regarding the defendant sellers, Defendants' counsel was already listed as the point of contact for certain sellers—and the list was assembled within *days* of service of the TRO. Declaration of Deepa A. Chari, ¶¶ 3–4. This raises questions about the relationships among Defendants that their brief does not answer.

Defendants appeared in this action and are represented by counsel, somewhat unusually for Schedule A cases. But they appeared *because* they are subject to a TRO. Their appearance and defense does not prove they would not dissipate assets in the absence of a TRO. If anything, it proves the opposite: the requested injunctive relief worked. If that injunctive relief is not continued through the pendency of the case, there is no guarantee Defendants will not abscond. All bets are off.

Indeed, the concern that foreign online sellers can disappear with the proceeds of their infringement and leave plaintiffs without a remedy is raised and taken seriously in most "Schedule A" cases, and it is a basis for the injunctions granted frequently in those cases. *See, e.g.*, *Deckers Outdoor Corp. v. Does 1-100*, No. 12 C 10006, 2013 WL 169998 (N.D. Ill. Jan. 16, 2013); *Peng v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-CV-1344, 2021 WL 4169564 (N.D. Ill. Sept. 14, 2021); *Tory Burch LLC v. Does 1-100*, No. 12 C 7163,

2012 WL 4581409 (N.D. Ill. Oct. 2, 2012). In fact, this concern about foreign online defendants in infringement actions is so frequently the basis for granting injunctive relief in this Court that Judge Pacold of the Northern District of Illinois has on her website a template Proposed Temporary Restraining Order for "Schedule A" cases which reads: "in the absence of an ex parte Order, Defendants could and likely would move any assets from accounts in financial institutions under this Court's jurisdiction to off-shore accounts."[2] The relief requested is routine, and it is routine for good reason: Foreign defendants in Schedule A cases present a high risk of moving funds to offshore accounts absent injunctive relief.

Finally, the fact that Defendants stopped selling the accused products does not weigh against a finding of irreparable harm. Defendants did not stop selling these products voluntarily—in fact, they did not even take action themselves to stop. Their infringing product listings were removed by Temu in compliance with the TRO. And these were just the listings Roadget identified in Schedule A to the Complaint; there may yet be other infringing listings. Defendants' forced cessation of infringement does not count in their favor.

**V.      This Court Can and Should Maintain the Full Asset Freeze, at Least Until Roadget Can Conduct Expedited Discovery into Defendants' Uncorroborated Profit Data.**

Defendants object to an asset freeze that is standard in copyright actions seeking equitable relief, and common in "Schedule A" cases. *See Banister*, 2018 WL 4224444 at *9; *Chrome Cherry Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-05491, 2021 WL 6752296, at *1 (N.D. Ill. Oct. 20, 2021) (granting a temporary restraining order including a full asset freeze); *Deckers Outdoor Corp*, 2013 WL 12314399, at *3 (same). In fact, the relief is so standard that it is incorporated into Judge Pacold's template for proposed

---

[2] https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/Pacold/TRO%20Template%20Schedule%20A%20cases.pdf

11

orders for "Schedule A Cases," discussed above, which includes a form provision freezing all assets.[3]

Moreover, when disgorgement is sought and the amount of profit is unknown, as here, courts have found it appropriate to freeze *all* assets, even over Defendants' objection. This is particularly true when there is a high likelihood that plaintiffs will succeed on the merits. In *Deckers Outdoor Corporation v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, No. 13-cv-07621, 2013 WL 12314399, at *3 (N.D. Ill. Oct. 31, 2013), for example, this Court froze all defendant assets over their objections, reasoning that the amount of profit was not known and the plaintiff was likely to win an accounting of profits if pursued. *Id*. at *2. And in *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-cv-6283, 2012 WL 5265727, at *3 (S.D.N.Y. Oct. 24, 2012), on which Defendants rely, the court reduced the asset freeze in part over skepticism at the strength of the plaintiff's case. Here, Roadget has demonstrated its likelihood of success on the merits. Defendants' copies are identical or virtually identical to the original designs, leaving such little doubt of willful infringement that Defendants do not even try to argue the question.

Even if the Court were inclined to entertain a reduction in the asset freeze, Defendants are not entitled to a reduction in the asset freeze to the amount of profits until that amount is proven—and their unsupported statements are not proof. In an accounting for profits under the Copyright Act, the burden is on Defendants to prove their costs. 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses

---

[3] https://www.ilnd.uscourts.gov/_assets/_documents/_forms/_judges/Pacold/TRO%20Template%20Schedule%20A%20cases.pdf.

and the elements of profit attributable to factors other than the copyrighted work."). The party seeking to exempt assets from an asset freeze carries the burden of presenting "documentary proof that particular assets are not the proceeds of" of the unlawful activity. *Antsy Labs, LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, *4 (N.D. Ill. Nov. 23, 2022) (citations omitted) (refusing to amend an asset freeze because the defendant's records were incomplete and therefore unreliable); *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444 at *9 (N.D. Ill. Sept. 5, 2018) (freezing assets where the defendant failed to provide documentary proof).

Defendants' uncorroborated statements as to profits—bare numbers with no account of how costs were calculated, and no proof of sales—do not constitute the required documentary proof. Given this uncertainty, Roadget requests that the full asset freeze remain in place pending expedited discovery to explore Defendants' numerous factual assertions. In the alternative, Roadget requests a limited reduction in the asset freeze to three times the asserted amount of revenue attributable to infringing sales until it can conduct discovery into the full extent of Defendants' infringement.

Defendants have not provided sales data, proof of how costs were calculated, or even proof that they are not currently profiting off of Roadget's registered copyrights through *other* products not listed in Schedule A. Absent such documentary proof, and given the serious risk of dissipation of assets already discussed, this Court should maintain the standard full asset freeze.

## **CONCLUSION**

Roadget respectfully submits that Defendants' motion should be denied.

February 14, 2024            Respectfully submitted,

                                       By: */s/ Steven J. Horowitz*
                                       Steven J. Horowitz
                                       Matthew D. Binder
                                       Deepa A. Chari
                                       **SIDLEY AUSTIN LLP**
                                       One South Dearborn Street
                                       Chicago, IL 60603
                                       (312) 853-7000
                                       shorowitz@sidley.com
                                       mbinder@sidley.com
                                       dchari@sidley.com

                                       *Counsel for Plaintiff*
                                       *Roadget Business Pte. Ltd*