# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore,**<br><br>Plaintiff,<br><br>v.<br><br>**THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO**<br><br>Defendants. | **CIVIL ACTION NO. 1:24-cv-00115**<br><br>Judge: Hon. Elaine E. Bucklo |

**DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO DISSOLVE OR MODIFY TEMPORARY RESTRAINING ORDER[1]**

---

[1] Defendants as identified in Defendants' Emergency Motion to Dissolve or Modify Temporary Restraining Order, Dkt. No. 30.

1

## I.     Personal Jurisdiction

Counsel for the Defendants has now had an opportunity to investigate Defendants' sales. Because each of the Defendants has made sales of the accused products in Illinois, the Defendants concede to the Court's exercise of personal jurisdiction in this case.

## II.     The Asset Freeze Should Be Reduced to Defendants' Accused Profits

A total asset freeze, as sought by Plaintiff, "is a bit of a blunt instrument", Ex. A (Transcript of Feb. 6, 2024 Hearing, No. 23-cv-17036, at 5:5-6), which, when "[inappropriate] for certain defendants" should be modified, *id.* at 5:7-8. Defendants submit that the outcome before Judge Ellis, presiding over another Schedule A case brought by Plaintiff (No. 23-cv-17036), may be useful to consider. Judge Ellis directed the parties to confer and attempt to agree to an asset freeze that was appropriate to the facts of the case. *Id.* at 6:15-7:2. At Judge Ellis' direction, the parties conferred and jointly agreed to reduce the amounts frozen to the sales revenues obtained from third-party Temu and submitted by the Defendants in declarations sworn under penalty of perjury. Ex. B (Transcript of Feb. 8, 2024 Hearing, No. 23-cv-17036, at 1:10-21); *see also* Ex. C (Dkt No. 40, Feb. 8, 2024 Minute Entry, No. 23-cv-17036 ("the Court modifies the asset restraining in the temporary restraining order.")) The parties' agreement was reached and the order modifying the TRO were entered on February 8, 2024, after Defendants' Motion (Dkt. No. 31) was filed but before Plaintiff's Response (Dkt. No. 40) was filed, on February 14, 2024.

The proper amount of an asset freeze in this case is profits on accused sales.[2]  *See* Dkt. 30 at 5-6. However, to reduce the immediate, real, and substantial harms to Defendants from the overbreadth of a total asset freeze, Dkt. 30 at 14 (declarations detailing total asset freeze's impacts

---

[2] Plaintiff's argument about infringement by unidentified products is baseless. If Plaintiff had a legal justification for its position to seek a freeze of three times accused sales, then it would have provided it to the Court. *See* Dkt. 40 at 13.

on employees and suppliers), Defendants submit that the *maximum* amount of any asset freeze should be limited to Defendants' gross sales on accused products as obtained from third-party Temu, and as reflected in Defendants' sworn declarations submitted to the Court, which are materially equivalent to those submitted in a similar case before Judge Ellis, *see* Dkt. No. 31 at 3 (chart showing gross sales, with accompanying declarations).

Here, the Court's reliance on Defendants' declarations to reduce the asset freeze to profits would be both justified and appropriate. The Court in *Awareness Ave. Jewelry LLC*, also a Schedule A case, accepted a declaration on sales, costs, and profits that was detailed in the same manner as those of Defendants in this case, as a basis to reduce the asset freeze therein to $0. *Awareness Ave. Jewelry LLC*, 2023 WL 3568387, at *2; *compare* Ex. D (Dkt. 54-1 in *Awareness Ave. LLC*, No. 8:23-cv-2, Poposki Decl. ¶ 4) *with* Dkt. 30 at 3 (accompanying declarations). In contrast, nothing in the cases cited by Plaintiff calls into question the adequacy or reliability of Defendants' declarations. Plaintiff's reliance on *Antsy Labs, LLC v. Individuals et al.*, No. 21 C 3289, 2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) is misplaced – defendants' declaration therein falsely stated the date infringement ended, thereby calling into question the veracity of the declaration as a whole. *Antsy Labs, LLC*, 2022 WL 17176498, at *4. No such discrepancy exists in Defendants' declarations. *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444 (N.D. Ill. Sept. 5, 2018) is similarly unavailing – the defendant therein refused to produce any evidence of costs, arguing the "Court lack[ed] legal authority to restrain his bank account." *Banister*, 2018 WL 4224444, at *9. Here, Defendants have substantiated their profits sufficiently for the Court to reduce the asset freeze to profits. At a minimum, the asset freeze should be reduced to gross sales, as was agreed in the case before Judge Ellis, another Schedule A case brought by the same Plaintiff against merchants

who face nearly identical allegations of copyright infringement, anonymity, and irreparable harm by Plaintiff.

**III.**     **Balancing the Appropriateness of a TRO**

The remaining issues raised in Defendants' Motion and Plaintiff's Response devolve into competing versions of the significance of certain facts and legal positions. Defendants are not seeking a premature ruling by the Court on the manner in which service was effectuated or as to the validity of Plaintiff's asserted copyrights. The issue Defendants raise before the Court is much narrower – whether the boilerplate nature of Plaintiff's allegations, Plaintiff's lack of diligence in locating information for proper service of Defendants, and Plaintiff's extremely "thin" copyrights (if any in light of the myriad substantially similar published works predating Plaintiff's copyrights) weigh in favor of the blunt instrument of an *ex parte* TRO when the Defendants have appeared to defend themselves and have produced financial data sufficient to reduce the asset freeze. Plaintiff's Response, expressing surprise that Defendants have shown up to defend, does not reveal a need for urgent equitable relief tied to profit – rather, it reveals Plaintiff's desire to burden the small merchant Defendants in this case and potentially put them out of business, all while leveraging the power of this Court to do so.

Dated: February 21, 2024                          Respectfully Submitted,

                                         */s/     Christopher J. Fahy*

Christopher J. Fahy
ARCH & LAKE LLP
203 N. LaSalle St., Ste. 2100
Chicago, IL 60601
Phone: 312-558-1369
Fax: 312-614-1873
Christopher@archlakelaw.com

*Counsel for Defendants*


Haoyi Chen
ARCH & LAKE LLP
2500 Wilcrest Dr.
Houston, Tx 77042
Phone: 346-335-9870
Fax: 312-614-1873
haoyichen@archlakelaw.com

*Counsel for Defendants*
*Pro hac vice forthcoming*


William W. Flachsbart
DUNLAP BENNETT & LUDWIG
333 N. Michigan Ave. Suite 2700
Chicago, Illinois 60601
Phone: 312-551-9500
wflachsbart@dbllawyers.com

*Counsel for Defendants*

# EXHIBIT A

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   ROADGET BUSINESS PTE, LTD.,        )  No. 23 C 17036
                                        )
 4                  Plaintiff,          )
                                        )
 5           vs.                        )  Chicago, Illinois
                                        )
 6   THE INDIVIDUALS, CORPORATIONS,     )
     LIMITED LIABILITY COMPANIES,       )
 7   PARTNERSHIPS, and UNINCORPORATED   )
     ASSOCIATIONS IDENTIFIED ON         )
 8   SCHEDULE A TO THE COMPLAINT,       )
                                        )  February 6, 2024
 9                  Defendants.         )  9:45 a.m.

10                    TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HON. SARA L. ELLIS
11
     APPEARANCES:
12
     For the Plaintiff:    MR. STEVEN J. HOROWITZ
13                         Sidley Austin LLP,
                           One South Dearborn Street,
14                         Chicago, Illinois  60603

15
     For Various
16   Defendants:           MR. WILLIAM W. FLACHSBART
                           Dunlap, Bennett & Ludwig PLLC,
17                         333 North Michigan Avenue, 27th Floor,
                           Chicago, Illinois  60601
18
                           MR. CHRISTOPHER J. FAHY
19                         Arch & Lake LLP,
                           203 North LaSalle Street, Suite 2100,
20                         Chicago, Illinois  60601

21

22

23                       PATRICK J. MULLEN
                       Official Court Reporter
24                   United States District Court
                 219 South Dearborn Street, Room 1412
25                     Chicago, Illinois  60604
                          (312) 435-5565
```

1   (Telephonic proceedings on the record.)

2    THE CLERK:  23 CV 17036, Roadget Business Pte, Ltd.,

3 versus The Parties Identified on Schedule A.

4    MR. HOROWITZ:  Good morning, Your Honor.  This is

5 Steven Horowitz from Sidley Austin for plaintiff Roadget.

6    MR. FLACHSBART:  Good morning, Your Honor.  William

7 Flachsbart from Dunlap, Bennet & Ludwig.  I represent 16 of the

8 enumerated defendants, and with me on the line is Christopher

9 Fahy from Arch & Lake.

10    THE COURT:  All right.  So we've got a lot going on

11 here, and I wanted to know what -- so has plaintiff had a

12 chance to look at the response that was filed to their motion

13 to extend the TRO?

14    MR. HOROWITZ:  Yes, Your Honor, and I think it's sort

15 of tied up with the motion to dissolve as well, which we've had

16 a chance to look at but not had a chance to file a brief in

17 response to.  I think frankly it would benefit the Court and

18 the parties to have a complete presentation with briefing on

19 that.  Obviously these are all urgent matters, so we would

20 propose to file a response brief to their motion, which as I

21 said is closely related to ours, within three days.  Then we

22 can come back on Tuesday with Your Honor having the benefit of

23 the full briefing on each of the issues presented, and then we

24 can address them then.

25    THE COURT:  All right.  Have you had a chance to -- so

1    it seems to me that these defendants are -- I want defense

2    counsel to correct me if I'm wrong, but the biggest issue or

3    complaint that they have right now is the aspect of the TRO

4    that is freezing all of their accounts and --

5              MR. FLACHSBART:  That is -- oh, I'm sorry, Your Honor.

6              THE COURT:  -- and, you know, they would, at least it

7    appears to me, be willing to allow this to play out if I

8    modified the aspect of the TRO that froze all their accounts

9    and simply froze what the parties could come to an agreement on

10   as to the infringing products.  Is that correct?

11             MR. FLACHSBART:  That is more or less correct, Your

12   Honor.  Obviously the biggest concern to our clients right now

13   is the wildly disproportionate nature of the freeze.  If you

14   were to freeze the actual profits that were identified in the

15   supplemental data that we provided yesterday, you would be

16   freezing roughly 1/200ths of the amount that is currently

17   frozen.

18             This freeze is having like wildly disproportionate

19   effects on my client.  They're having to terminate people.

20   They're unable to operate in some instances because of the size

21   of the freeze as compared to the number of sales of the

22   potentially infringing products.  Obviously, I mean, we dealt

23   with it in the briefing but, you know, we don't believe that

24   such a large freeze is even authorized let alone appropriate.

25             Given that some of these enumerated defendants have

4

1    literally zero sales on the accused products, those defendants
2    are particularly out of line to have their funds frozen.  I
3    mean, I wouldn't go as far as to say we would agree to it, but
4    I think if Your Honor anticipates reopening the TRO -- and I
5    will point out that the TRO lapsed as of Friday and these funds
6    still remain in situ.  They have not been removed, and I think
7    that's, you know, indicative of where we are at with this case.
8         These defendants are here.  My clients are here
9    through me and Mr. Fahy, and they are fighting this case.
10   Obviously, you know, that's one of the concerns raised in the
11   initial TRO request.  So we would rather see the TRO not be
12   reinstituted.  But if Your Honor is inclined to do so, then I
13   think the appropriate thing to do would be to freeze only the
14   actual profits in line with the caselaw.
15        MR. HOROWITZ:  Your Honor, may I be heard on that
16   briefly?
17        THE COURT:  Yes.
18        MR. HOROWITZ:  So there's a lot there, and frankly
19   that's why we want to submit a brief to Your Honor.  So the
20   suggestion that the full asset freeze is somehow extraordinary
21   or unusual is simply misplaced.  For one thing, the order that
22   we proposed and submitted to the Court is literally a form
23   order.  It's modified in some respects, but not with respect to
24   the asset freeze that we pulled off the Northern District's
25   website.

1            THE COURT:  I know.  I helped draft that order.

2            MR. HOROWITZ:  Okay.  Great.

3            THE COURT:  So I get that, but sometimes -- and I

4    can't tell you how many hundreds, but I'm sure at this point

5    thousands of these cases that I've done -- this instrument is a

6    bit of a blunt instrument.  When it comes to my attention that

7    it may not be appropriate for certain defendants to freeze all

8    their assets, I have modified the asset restraint.  So --

9            MR. HOROWITZ:  Absolutely, Your Honor.  I'm sorry.

10           THE COURT:  So this is what I'd like you to do.  You

11   know, I will set a briefing schedule, but in the meantime I

12   would like you to talk to each other.  I'll see you back on the

13   phone on Thursday to just talk about this portion of the asset

14   restraint, and then we can, you know, go forward.  I'll decide

15   on the TRO, dissolving the TRO and all of that, but I think

16   that the most primary or most critical piece of it is the asset

17   restraint right now.

18           MR. HOROWITZ:  Thank you, Your Honor.  I just would

19   note that as of now, you know, we've heard these assertions

20   about the numbers, but one of the concerns we have is the

21   reliability of the information.  So we'll talk to them about it

22   but, you know, they say to just freeze their actual profits.

23   Well, that's based on an assertion by a lawyer in a paper.

24   We've never had a chance to take a deposition of anyone.  We've

25   never had a chance to take any discovery.  So they say that

1    that's their profit, but under the Copyright Act, when it comes

2    to profits, all we have to do is prove revenues and it's on

3    them to prove the share of revenues that are attributable to

4    deductible expenses.

5          So my point is this.  We'll talk about it with the

6    other side, but the idea that they can just assert that this is

7    a revenue attributable to X and this is their profits, it's not

8    sufficient protection for us at this stage of the case when all

9    we have is their assertion.  So we'll talk to them about it.

10   We may propose in our briefing expedited discovery to focus the

11   extent of the asset freeze, and we're happy to come back

12   Thursday or, as I said, we can brief the asset freeze issue

13   which is the primary issue before Your Honor.  If it has to be

14   Thursday, we can try to file a brief tomorrow.

15         THE COURT:  No, I don't need the -- you know, I'll let

16   you file a brief.  You said you needed three days, and that's

17   fine with me.  I'd just like to see you back on Thursday so

18   that you folks could talk today and tomorrow and the defendants

19   can provide what they need to provide to give you a certain

20   comfort on the asset restraint if that's appropriate.  All

21   right?

22         So if the parties can agree to it, it's much better

23   than if I, you know, in looking at things say yea or nay, if

24   the parties can work something out to allow the case to proceed

25   but allow the defendants to not have to shut down their

1    business if their business is not fully comprised of

2    essentially selling infringing products.

3            MR. HOROWITZ:  I understand, Your Honor.  Thank you.

4            THE COURT:  All right.  So I'll see you everybody on

5    Thursday at 1:30.  Go ahead.

6            MR. FLACHSBART:  1:30 p.m., Your Honor?

7            THE COURT:  Yes, 1:30 on Thursday.

8            MR. FLACHSBART:  Thank you, Your Honor.

9            THE COURT:  Okay.  Then when do plaintiffs want to

10   file the response?

11           MR. HOROWITZ:  If we are speaking on Thursday, it

12   might be beneficial to take -- if we're speaking tomorrow or

13   Thursday, it might be beneficial to take at least the weekend.

14   So if we can have until next -- until a week from today for the

15   response for the motion to dissolve, that would be great.

16           THE COURT:  Sure.  That's fine.

17           MR. FLACHSBART:  I think, Your Honor, if I could on

18   behalf of my clients, again, this is William Flachsbart for the

19   defendants.  If in the meantime the freeze could be limited

20   perhaps to sales which would include any potential profit, I

21   mean, that would be helpful to us in terms of keeping the

22   clients operating given the additional time.

23           THE COURT:  Well, we're going to see where we are on

24   Thursday.  So why don't I pick it up on Thursday, but see what

25   you can resolve with each other.  Okay?

1    MR. FLACHSBART:  Okay.  Certainly, Your Honor.  Thank

2  you.

3    THE COURT:  All right.  See you Thursday.

4    MR. HOROWITZ:  Thank you, Your Honor.

5     (Proceedings concluded.)

6      C E R T I F I C A T E

7     I, Patrick J. Mullen, do hereby certify that the

8  foregoing is a complete, true, and accurate transcript of the

9  proceedings had in the above-entitled case before the Honorable

10  SARA L. ELLIS, one of the judges of said Court, at Chicago,

11  Illinois, on February 6, 2024.

12

13        /s/ Patrick J. Mullen
         Official Court Reporter
14        United States District Court
         Northern District of Illinois
15        Eastern Division

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   ROADGET BUSINESS PTE, LTD.,        )  No. 23 C 17036
                                        )
 4                  Plaintiff,          )
                                        )
 5              vs.                     )  Chicago, Illinois
                                        )
 6   THE INDIVIDUALS, CORPORATIONS,     )
     LIMITED LIABILITY COMPANIES,       )
 7   PARTNERSHIPS, and UNINCORPORATED   )
     ASSOCIATIONS IDENTIFIED ON         )
 8   SCHEDULE A TO THE COMPLAINT,       )
                                        )  February 8, 2024
 9                  Defendants.         )  1:45 p.m.

10                    TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HON. SARA L. ELLIS
11
     APPEARANCES:
12
     For the Plaintiff:    MR. STEVEN J. HOROWITZ
13                         Sidley Austin LLP,
                           One South Dearborn Street,
14                         Chicago, Illinois  60603

15
     For Various
16   Defendants:           MR. WILLIAM W. FLACHSBART
                           Dunlap, Bennett & Ludwig PLLC,
17                         333 North Michigan Avenue, 27th Floor,
                           Chicago, Illinois  60601
18
                           MR. CHRISTOPHER J. FAHY
19                         Arch & Lake LLP,
                           203 North LaSalle Street, Suite 2100,
20                         Chicago, Illinois  60601

21

22

23                     PATRICK J. MULLEN
                     Official Court Reporter
24                 United States District Court
               219 South Dearborn Street, Room 1412
25                   Chicago, Illinois  60604
                        (312) 435-5565
```

 1          (Telephonic proceedings on the record.)

 2          THE CLERK:  23 CV 17036, Roadget Business Pte, Ltd.,

 3   versus The Parties Identified on Schedule A.

 4          MR. HORWITZ:  Good afternoon, Your Honor.  This is

 5   Steve Horwitz from Sidley Austin for plaintiff Roadget.

 6          MR. FLACHSBART:  Good afternoon, Your Honor.  This is

 7   William Flachsbart from Dunlap, Bennett & Ludwig on behalf of

 8   16 of the defendants, and with me on the line is Christopher

 9   Fahy from Arch & Lake.

10          THE COURT:  All right.  So I was giving you to today

11   to kind of talk through and see if the parties could come to an

12   agreement on modifying the freeze.  What have you come to?

13          MR. HORWITZ:  Thank you, Your Honor.  This is Steve

14   Horwitz.  After some discussions which we can tell you the

15   details of, we have reached an agreement to modify the asset

16   freeze and to limit it to the -- and let me get this right --

17   the sales of the accused products as reported by TEMU, who

18   provided the data.  Mr. Flachsbart will correct me if I've

19   misspoken, but it's basically 100 percent of the revenue that's

20   specifically attributable to the products that are accused of

21   infringement.

22          THE COURT:  All right.  So why don't you do this.

23   Draft a proposed order modifying the asset freeze using the

24   language that you want and then send it to my proposed order

25   email and I can get it entered.  If you send it directly, not

3

1    just to the proposed order email but to my courtroom deputy,

2    it's Kerwin, k-e-r-w-i-n, underscore, Posley, p-o-s-l-e-y,

3    @ilnd.uscourts.gov.  If you can get that to him today, then

4    I'll get it entered.

5            MR. HORWITZ:  Thank you, Your Honor.

6            THE COURT:  All right.  Then plaintiff was going to

7    file a response, I believe, by the 16th, is that correct?

8            MR. HORWITZ:  I think, Your Honor, that we were due to

9    file a response to the motion to lift the -- to modify the TRO

10   -- excuse me -- lift the TRO or at least modify the asset

11   freeze by the 13th.  I'd have to check -- and maybe someone on

12   my team can jump in or Mr. Flachsbart -- but I think that our

13   deadline for filing a preliminary injunction motion, we

14   requested an extension to the 16th because we had just gotten

15   the data as of the time we filed that motion.

16           My proposal, although we haven't talked about it with

17   the other side so they can chime in, is that with the

18   modification of the asset freeze, which was kind of the focus

19   of the motion to lift the TRO, probably the most efficient

20   course would be to just consider the issues with the

21   preliminary injunction motion.  So we would just file a timely

22   preliminary injunction motion if Your Honor would grant the

23   extension that was presented on Tuesday rather than having to

24   brief and kind of address the same issue, one of which is

25   largely responding to a brief or a motion that's stale on the

4

1     asset freeze.

2            THE COURT:  Right.  That was going to be my question

3     to defendants.  You know, would you rather just respond to the

4     motion for preliminary injunction?

5            MR. FLACHSBART:  I think that's the most efficient

6     course for Your Honor; otherwise, we're addressing the same

7     issues twice.  Since we're reducing the freeze, that was really

8     the main focus of the instant motion.  So I don't have a

9     problem with responding to the PI motion so that Your Honor

10    only has to look at one set of briefing as opposed to two on

11    the same or sort of overlapping issues.

12           THE COURT:  Okay.  So then this is what I'm going to

13    do.  Given the parties' agreement, I'm going to deny the motion

14    at docket 23 as moot, which is 23 and 26, Kerwin, because 26 is

15    the unredacted version, and grant the motion to seal at 25.  I

16    will grant the motion at 29 to extend the TRO, and I will

17    extend the TRO through February 15th -- no, sorry -- February

18    16th.  Plaintiff should then file the motion for preliminary

19    injunction on the 15th.  When do defendants want to respond?

20           MR. FLACHSBART:  We'll respond as quickly as possible,

21    Your Honor.  If we could have seven days, that would be fine.

22    I think that's enough for us.  We'd like the reply -- I mean,

23    we want to get to grips with this issue because we think there

24    are some pretty strong grounds to oppose, and so we'd like to

25    try to be faster than that and have the reply be triggered, if

5

1    you're going to grant a reply, off of the date that we file, if

2    that's possible.

3           THE COURT:  Well, I think it's easier to keep track of

4    if we just have a date.

5           MR. FLACHSBART:  Okay.  Well, then we'll just ask for

6    seven days.

7           THE COURT:  All right.  So your response then is due

8    February 22nd.  Then when do plaintiffs want to file a reply?

9           MR. HORWITZ:  Could we have a week thereafter?

10          THE COURT:  Sure.  So that puts you at the 29th.  Then

11   I will have you back.  I'll have you back March 27th for a

12   ruling.

13          MR. HORWITZ:  Your Honor, I have a trial that's going

14   to be three and a half weeks leaving on the 27th.

15          THE COURT:  Oh, okay.

16          MR. HORWITZ:  Of course, you know, sometimes these

17   things shift, but it's in New York.  So, you know, if it's

18   earlier, fine.  If it's just for the ruling, then I suppose I

19   could have a colleague cover it, but if there's going to be

20   argument then --

21          THE COURT:  Yes, I may have questions.  It depends

22   because I haven't seen anything yet, so I don't know if I'll

23   have a hearing.  It starts on the 27th?

24          MR. HORWITZ:  Well, the trial itself is on the 3rd,

25   but there's, you know, like 20 witnesses.  So there's witness

 1   preps that are starting on the 27th that I'm going to be in New

 2   York for, and I'm lead trial counsel.  So, you know, if Your

 3   Honor has to do it on the 27th, then I would have someone else

 4   cover it.  That's how it would work.

 5           THE COURT:  What about the 26th?  Would that work?

 6           MR. HORWITZ:  It should.  Yes, the 26th is fine.

 7           THE COURT:  All right.  So we'll say the 26th at 9:30,

 8   and I'll let you know ahead of time if we'll need argument.

 9           MR. HORWITZ:  And would that be telephonic, Your

10   Honor?

11           THE COURT:  It is.

12           MR. HORWITZ:  Okay.  I think I'm travelling, but I'm

13   happy to dial in.

14           THE COURT:  Okay.  If it looks like I need argument,

15   we'll let the parties know and we can set a different date that

16   works for everybody.

17           MR. HORWITZ:  Your Honor, I wonder if we can

18   short-circuit one other thing.  So we only asked for an

19   extension of the TRO until the 16th because it can only be

20   extended as a TRO one time by 14 days.  As I know Your Honor is

21   aware, it's quite common in these Schedule A cases to then,

22   upon the filing of a preliminary injunction motion, have an

23   extension that is technically appealable because it becomes a

24   preliminary injunction but only through the end of the briefing

25   on the PI.

1         We can file a motion for that, but what we want to

2  avoid is the lifting of the asset freeze while the briefing on

3  the PI is ongoing.  So however Your Honor would like to proceed

4  with that, we're happy to file a motion, or we can reach an

5  agreement now.

6         THE COURT:  Yes.  Will the defendants just agree to

7  keep the asset freeze in place while we're briefing the

8  preliminary injunction motion?

9         MR. FLACHSBART:  Yes, as long as it's limited to what

10  we've talked about, the sales of the accused products.

11         THE COURT:  Okay.  So when you're drafting up the

12  modification, just throw a sentence in there stating that the

13  parties agree that the asset freeze will remain in place as

14  modified through the briefing and ruling on the preliminary

15  injunction motion.

16         MR. HORWITZ:  Thank you, Your Honor.

17         THE COURT:  Okay.  Anything else?

18         MR. HORWITZ:  Nothing.

19         MR. FLACHSBART:  And nothing from defendants, Your

20  Honor.

21         THE COURT:  Okay.  Great.  Thank you.

22         MR. FLACHSBART:  Thank you.

23         MR. HORWITZ:  Thank you.

24    (Proceedings concluded.)

25

1                    C E R T I F I C A T E

2          I, Patrick J. Mullen, do hereby certify that the

3    foregoing is a complete, true, and accurate transcript of the

4    proceedings had in the above-entitled case before the Honorable

5    SARA L. ELLIS, one of the judges of said Court, at Chicago,

6    Illinois, on February 8, 2024.

7

8                              */s/ Patrick J. Mullen*
                               Official Court Reporter
9                              United States District Court
                               Northern District of Illinois
10                             Eastern Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1**
**Eastern Division**

Roadget Business Pte. Ltd.

                                   Plaintiff,

v.                                        Case No.:
1:23−cv−17036
Honorable Sara L.
Ellis

The Individuals, Corporations, Limited Liability
Companies, Partnerships, and Unincorporated
Associations Identified on Schedule A Hereto

                                   Defendant.

**NOTIFICATION OF DOCKET ENTRY**

This docket entry was made by the Clerk on Thursday, February 8, 2024:

      MINUTE entry before the Honorable Sara L. Ellis: Telephone conference held on 2/8/2024 and continued to 3/26/2024 at 9:30 AM for ruling on Plaintiff's motion for preliminary injunction. Pursuant to the parties' agreement, the Court modifies the asset restraining contained in the temporary restraining order. Thus, the Court denies as moot Defendants' motion to dissolve or modify temporary restraining order [23], [26]. The Court grants Plaintiff's motion to extend the temporary restraining order [29]. Plaintiff shall file the motion for preliminary injunction on or before 2/15/2024. Defendant's response shall be filed by 2/22/2024, and any replies by 2/29/2024. Mailed notice. (kp, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT D

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 8:23-cv-00002-TPB-AAS

AWARENESS AVENUE
JEWELRY LLC, and MIKKEL
GULDBERG HANSEN,

        Plaintiffs,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE A

        Defendant.

_____/

### Declaration of Goran Poposki

    **Goran Poposki**, under penalties as provided by law pursuant to 28 U.S.C. § 1746, certifies under penalty of perjury under the laws of the United States of America that the following information is true and correct.

    1.    I am over the age of majority, and make this declaration on my own free will and from my personal knowledge.

    2.    I am co-owner of, and head of operations for the store operated by, Defendant, ZIAVIA (Def. No. 49), in this action.

    3.    ZIAVIA is not associated with or operated in conjunction with any other defendants in this action.

    4.    After a diligent search of sale records and to the best of my knowledge, ZIAVIA sold 857 units of the accused product for $34,801.30, less shipping costs ($7,515.90) and advertising spend ($21,298.74), resulting in a total net profit in the amount of $5,986.67. Attached as **Exhibit A** is a complete sale record of the accused product.

5.      ZIAVIA's account currently has a restrained amount of ~$31,74616 (46,798.12 AUD). Shopify Payments has limited ZIAVIA's ability to withdraw any funds from the account, regardless of whether the amount is connected to the product at issue or from future incomes. The asset restraint substantially hinders ZIAVIA's ability to continue its operations.

**FURTHER AFFIANT SAY NOT**

April 13, 2023

_____

Goran Poposki

