IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Roadget Business Pte. Ltd., | ) |
| Plaintiff, | ) |
| v. | ) No. 24 C 115 |
| The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A Hereto, | ) |
| Defendants. | ) |

Order

Plaintiff sues multiple entities, identified on "Schedule A" attached to the complaint, for copyright infringement. Like hundreds of other such cases brought in this district, in this case plaintiff sought an *ex parte* temporary restraining order ("TRO") and asset freeze, which I granted on January 17, 2024.

Certain defendants[1] have now appeared through counsel and move to dissolve or modify the TRO and asset freeze, arguing first that the asset freeze is overbroad because it extends to assets

---

[1] Specifically, this motion is brought by defendant numbers 1 (S H Baby), 6 (Free Loop), 7 (Be kind), 8 (Livi), 9 (Mi Fashion), 11 (Yeonhee women clothing), 13 (SYLP PLUS), 14 (SYLP), 16 (Dchen), 17 (Huang Kangwei).

unrelated to the alleged infringement. It is true that district courts are generally without authority to restrain assets prior to judgment where a plaintiff seeks a money judgment. *See Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 331–33 (1999). But an exception to that rule exists where, as here, a plaintiff seeks an equitable remedy, such as disgorgement of profits. *See Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) ("[T]he Court can permissibly freeze assets to protect a plaintiff's equitable remedies." (citations omitted)). In those circumstances, "the appropriate scope of prejudgment restraint must be limited only to what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013). Thus, "if the amount of the profits is known, then the asset freeze should apply only to that specific amount, and no more." *Id.*

None of this is disputed, but the parties disagree over whether a modification of the asset freeze is warranted at this time. "To exempt assets from an asset freeze, '[t]he burden is on the party seeking relief to present documentary proof that particular assets [are] not the proceeds of counterfeiting activities.'" *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015) (quoting *Luxottica USA LLC v. P'ships &*

2

*Unincorporated Ass'ns Identified on Schedule "A"*, No. 14 c 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015)). One of defendants' attorneys states in a declaration submitted with their motion that third-party Temu (the platform on which defendants sold the allegedly infringing products) produced a spreadsheet identifying (1) the total amount of assets frozen on the Temu platform, and (2) the dollar amount of sales from the accused products on the platform. *See* Chen Decl. ¶ 2, ECF 31-1; *see also* Exh. A, ECF 31-2 (copy of spreadsheet from Temu). Defendants also attach to their motion declarations given by representatives of the merchants that provide, among other information, the estimated costs associated with selling the accused products. Putting this information together, defendants argue, allows one to calculate the profits related to each accused product by subtracting the estimated cost identified by the merchant from the total revenue identified by Temu. And it is only to those profits that the asset freeze should apply.

The revenue figures from Temu, produced in response to plaintiff's request have as one indicator of reliability the fact that they were produced by a third party. They are rendered less reliable, however, by the lack of explanation about how the figures contained in the spreadsheet were determined. But even assuming those figures are sufficiently reliable, the cost figures given by defendants' representatives are decidedly not.

3

To take one example, the representative for "SYLP PLUS" and "SYLP" gives in a declaration "[t]he estimated total cost of selling the Accused Products . . . including the cost of goods and materials, direct labor costs related to the Accused Products, and the Enterprise's reasonable share of general administrative expenses." Sheng Decl. ¶ 10, ECF 31-8. (The other declarations read the same, other than the number provided.) Critically, there is no documentary evidence provided to back up any of the components of the total cost. Sworn affidavits attesting to these amounts are worth something, but they are insufficient on their own to satisfy defendants' burden of "present[ing] documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Monster Energy*, 136 F. Supp. 3d at 910 (citation and internal quotation marks omitted). Without reliable information about the cost of selling the accused products, it is impossible to arrive at a reliable profit figure. *See Antsy Labs, LLC v. Individuals, Corps. Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 21 C 3289, 2022 WL 17176498, at *4–5 (N.D. Ill. Nov. 23, 2022) (denying similar motion where defendants' submitted declarations were not sufficiently reliable evidence of profits).

Defendants' motion also seeks to dissolve the TRO altogether, arguing for several reasons that plaintiff has not met the standard

4

for a TRO.[2] First, defendants argue plaintiff's request for email service of process was improper. However, they fail to explain how the issue of email service ties into the appropriateness of an *ex parte* TRO, so I decline to entertain that argument at this stage.

Defendants next argue that plaintiff has failed to show a likelihood of success as to several asserted copyrights because those copyrights are not "original." Even assuming the relevant works are derivative, and that plaintiff must show "sufficient nontrivial expressive variation in the derivative work to make it distinguishable from the underlying work in some meaningful way," *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 521 (7th Cir. 2009), I am satisfied at this early stage that plaintiff has a likelihood of doing so. There are sufficient differences between plaintiff's claimed works, on the one hand, and defendants' proffered preexisting images, on the other, to conclude that plaintiff has established a likelihood of success on the issue of originality.

Plaintiff has also shown a likelihood of irreparable harm absent a TRO. Defendants--business entities whose names differ from the ones appearing on their online storefronts--could easily transfer assets out of plaintiff's reach in the absence of a TRO

---

[2] Defendants also argued that plaintiff has failed to establish personal jurisdiction, but submit to the exercise of personal jurisdiction in their reply brief.

and asset freeze. For example, one defendant's storefront alias is "S H Baby," but it is operated by a company called "Foshan Qiqiao Childhood Clothing Co., Ltd." Mingzhu Decl. ¶ 3, ECF 31-9. The concern that entities residing in foreign jurisdictions might transfer assets to avoid a money judgment is a common justification for granting *ex parte* TROs in Schedule A cases in this district. *See, e.g.*, *Peng v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 21-cv-1344, 2021 WL 4169564, at *3 (N.D. Ill. Sept. 14, 2021). Defendants have not assuaged those concerns in this case.

Accordingly, defendants' motion is denied.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: March 6, 2024