IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., | |
| Plaintiff, | Case No.: 1:24-cv-115 |
| vs. | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, | Judge Elaine E. Bucklo |
| | PUBLIC REDACTED VERSION |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO
ALTER OR AMEND TEMPORARY RESTRAINING ORDER**

Plaintiff Roadget Pte. Ltd. ("Roadget") filed this suit to enforce its copyrights, which have been blatantly infringed by the Defendants. *See* Sealed Compl., ECF No. 8. The Defendants in this case are foreign online sellers, using the third-party platform Temu to sell goods using Roadget's copyrighted designs and photographs. This is the *third* time that the scope of the requested asset freeze has been challenged; the previous two attempts were unsuccessful. First, counsel for Defendants raised objections under the title of *amicus curiae*, but the Court granted the requested relief, including the full asset freeze over their objections. The Court issued a Temporary Restraining Order ("TRO") under seal on January 17, 2024. ECF No. 20.

Then, after counsel appeared in the case, Defendants filed an Emergency Motion to Modify the TRO and the Court again rejected their arguments and denied their motion. Defendants now asks the Court for a *third* time to reconsider the scope of the asset freeze based on the same arguments as before and with insufficient evidence that, in any event, either was

already presented—or at a minimum could have been presented—in connection with their last motion to reconsider the TRO. Motions to reconsider are rarely appropriate, and they are not available for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). That is all that is sought here.

Defendants have not provided any new evidence that warrants the Court's reconsideration as to the balance of harms between the parties. They proffer nothing more than an objection to the scope of the asset freeze, an argument repeatedly rejected by the Court. Now, Defendants believe the third time to be the charm by rehashing this previously rejected argument and submitting a declaration from Temu that nonetheless does not alleviate any of the Court's previously expressed concerns, nor changes the balance of harms to favor Defendants. Accordingly, Defendants' motion should be denied.

## LEGAL STANDARD

Defendants ask the Court to reconsider its prior Order denying the modification of the TRO under Rule 59(e). A motion for reconsideration is valuable where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). These issues warranting reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id*. Relief under Rule 59(e) is generally considered extraordinary. *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 528 (7th Cir. 2022). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (citation

omitted). A court may only alter or amend a judgment under Rule 59(e) "if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008).

## ARGUMENT

**I.  Defendants' Request for Reconsideration Should Be Denied Because It Raises The Same Argument Repeatedly Rejected By This Court.**

Defendants' latest motion claims that the increased amount of frozen assets constitutes "newly discovered evidence" that warrants the Court's reconsideration as to the balancing of harms between the parties. At no point have Defendants established their entitlement to the relief they continue to request, and now they come to the Court with nothing new—what they have now could have been sought previously, and they should not be allowed to seek a re-do of their previously rejected argument. Considering that Defendants have not at any point disputed that they copied Roadget's copyrighted works, their restated contentions about the consequences of their infringement again do not outweigh the irreparable harm Roadget faces without the full asset freeze in place.[1]

Defendants merely contest that the amount in frozen assets (imposed to preserve Roadget's interest in the assets while discovery occurs) has exceeded the revenue generated by the accused products, but Roadget has not had any opportunity to verify any of the provided figures. The alleged growth of the amount of frozen assets is merely a logical observation and does not rise to "newly discovered evidence" to grant such extraordinary relief under Rule 59(e). Defendants did not submit to the Court any new information that warrants such a significant departure from the standard asset freeze issued in Schedule A cases.

---

[1] Roadget does not wish to belabor this issue twice visited by the Court—as Defendants do—and so reiterates the irreparable harm arising out of Defendants' conduct.

3

Further, the amounts of assets frozen remain, in many cases, either modestly or significantly less than the alleged amount of revenue produced by the infringing conduct. ▮

▮▮▮ This already sharply limits Roadget's ability to obtain any meaningful recovery for Defendants' copyright infringement, as a practical matter. Without a full asset freeze, there is a substantial risk that the Defendants—who are now confirmed to be located exclusively outside the United States—will divert their funds and make it all but impossible for Roadget to obtain relief. The only evidence that Defendants produced when this argument was first considered by the Court were a handful of declarations (not even a declaration for each Defendant, let alone Defendants who had less in frozen assets than generated revenue), which simply contained conclusory statements about general costs such as "the cost of goods and materials, direct labor costs related to the Accused Products, and the Enterprise's reasonable share of general administrative expenses." ECF No. 58 at 4 (citing Sheng Decl. [31-8] ¶ 10). As the Court stated, "Sworn affidavits…are insufficient on their own to satisfy defendants burden of presenting documentary proof that particular assets [are] not the proceeds of counterfeiting activities." *Id*. (internal quotations omitted). Neither the previous declarations, nor the new Declaration of Christine Casaceli, provide any insight into the reliability of these figures. *See* ECF No. 62-1 ("Casaceli Decl.").

Even if the Court were inclined to entertain a reduction in the asset freeze, Defendants are not entitled to a reduction in the asset freeze to the amount of revenue until that amount is proven—and Temu's third-party, untested statements do not substantiate their calculations. At the moment, the only evidence of revenue that has been obtained is the data provided by Temu, which the Court already decided was unreliable. ECF No. 58 at 3–4. Defendants have not

4

provided any sales data, proof of how costs were calculated, nor demonstrated that the growth in frozen assets is solely attributable to non-infringing products. Absent such documentary proof, and given the serious risk of dissipation of assets already discussed, this Court should maintain the standard full asset freeze.

II. **The Custodial Declaration from Third-Party Temu Is Unreliable and an Improper and Unsuccessful Attempt to Allow Defendants to Complete Their Previously Rejected Argument.**

A Rule 59(e) motion does not "enable a party to complete presenting his case after the court has ruled against him." *Matter of Reese*, 91 F.3d 37, 39 (7th Cir. 1996) (citation omitted). The declaration that Defendants submit serves this exact purpose: it attempts to submit supplemental information to respond to the Court's concerns surrounding the reliability of Temu's data, but it fails to do so. While the Casaceli Declaration provides some explanation as to how the Temu data was gathered, it raises more questions than answers without more information from the Defendants themselves. For example, the Declaration states that revenue was determined by reference to "Good ID" numbers, which are listed on the Temu data spreadsheet. Casaceli Decl. at ¶ 5. However, there is no proof that these Good ID numbers are the only ones under which the Defendants sold infringing goods. It is plausible, perhaps even likely, that the Defendants have listed infringing products under more than one Good ID, or listed an infringing product under one Good ID only to take the listing down and relist it later under a different Good ID. Without more details about how this system works or documentary evidence from the Defendants, there is no way to adequately judge the reliability of the data. The Defendants produced no records of their own to verify revenue data, and their declarations provide no detailed explanation of their revenue beyond the Temu data. *See, e.g.,* Declaration of Sheng, ECF No. 31-8 at ¶ 9.

5

Defendants' continued attempt to circumvent the requirement for documentary proof by relying on assumptions about the reliability of the Temu data, self-serving declarations, and mere observations about the growing asset freeze is unavailing. As noted, there are questions about the reliability of the Temu-provided data, even setting aside the possibility of coordination between Temu and Defendants that would raise questions as to whether it is as independent, as Defendants suggest. Put simply, Roadget has not yet had an opportunity to engage in discovery to verify the revenue that the Defendants obtained through their infringement. And the Defendants' supporting declarations do little to provide certainty. Reducing the asset freeze to the amount of revenue identified to date based on the limited information before the Court now could very well limit Roadget's ability to recover later on, if in fact this revenue data is incorrect or incomplete. It would be unfair to limit that recovery at this point, before discovery has even begun. The Casaceli Declaration should not quell any of the Court's concerns regarding the reliability of any of the data provided to date, and Defendants should not be permitted to submit another baseless declaration in an attempt to create yet another opportunity to raise the same argument previously rejected by the Court. Accordingly, Roadget respectfully asks that this Court leave the full asset freeze in place.

## **CONCLUSION**

Roadget respectfully submits that Defendants' Motion should be denied.

| | |
|---|---|
| March 27, 2024 | Respectfully submitted,<br><br>By: */s/ Steven J. Horowitz*<br>  Steven J. Horowitz<br>  Matthew D. Binder<br>  Deepa A. Chari<br>  Michael C. Springer-Ingram<br>  **SIDLEY AUSTIN LLP**<br>  One South Dearborn Street<br>  Chicago, IL 60603<br>  (312) 853-7000<br>  shorowitz@sidley.com<br>  mbinder@sidley.com<br>  dchari@sidley.com<br>  mspringeringram@sidley.com<br><br>  *Counsel for Plaintiff*<br>  *Roadget Business Pte. Ltd* |