IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO <br><br> Defendants. | CIVIL ACTION NO. 1:24-cv-115 <br><br> Judge: Hon. Elaine E. Bucklo |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO ALTER OR
AMEND ORDER DENYING DEFENDANTS' EMERGENCY MOTION
TO DISSOLVE OR MODIFY TEMPORARY RESTRAINING ORDER**

I.     **PRELIMINARY STATEMENT**

In their Motion, Defendants offered new evidence that shows the expected harm to Defendants has come to pass and that the amount frozen now greatly exceeds what is reasonably necessary to secure any future equitable relief. Plaintiff's Response largely ignores the evidence, case law, and arguments raised in Defendants' Motion, concentrating instead on arguments that are inconsistent with Plaintiff's own conduct and the nature of these proceedings.

First, Plaintiff has relied on and benefitted from Defendants' sales data produced by third-party e-commerce platform Temu, throughout this proceeding and other Schedule A cases, but now that Defendants offer the same data to demonstrate why the Court should reduce the asset freeze, Plaintiff attempts to fabricate a dispute about its reliability. Second, Plaintiff argues that Defendants' evidence is untimely because it should have been submitted with their *Emergency Motion to Dissolve or Modify the TRO*, while using the expedited time frame of this proceeding as a reason to keep the full asset freeze.

Defendants' new evidence is both timely and reliable. It is timely because it provides information detailing the increased amount that is now frozen, which had not yet occurred at the time of prior briefing. At the time of Defendants' Motion to Dissolve or Modify the TRO, Defendants' revenue on the accused products—sales of which ceased January 23, 2024—was ▇▇▇▇▇▇, and the amount frozen was nearly ▇▇▇▇▇▇. Now, over ▇▇▇▇▇▇ is frozen, which is over *12 times* the ▇▇▇▇▇▇ in accused product revenue. In addition to showing a new, significant, and increasing harm to Defendants, the amount that is now frozen far exceeds what is reasonably necessary to secure any future equitable relief. The new evidence also is timely because it addresses how the relevant sales figures were determined, the details of which Defendants previously had no reason to obtain or submit because neither Plaintiff nor Defendants disputed the

sales data. Under Seventh Circuit precedent, the Court may amend a final order based on newly obtained evidence that the movant had no reason to obtain before the Court's ruling, even if it may have been previously available to the movant. *See In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

Lastly, Plaintiff provides no sufficient reason to question the reliability of Temu's authenticated evidence, which was submitted under oath by a Temu representative with personal knowledge of the business records from which the information was derived. The evidence is reliable because it came from the third-party platform on which Defendants sold the accused products, which is the same reason Plaintiff has repeatedly relied upon it in this action and other Schedule A cases. Plaintiff's Response provides no legitimate basis to deny Defendants' Motion.

II.     **ARGUMENT**

   **A. Plaintiff Provides No Sufficient Reason to Disregard New Evidence Supporting Reduction of the Asset Freeze.**

In their Motion, Defendants presented new evidence demonstrating increasing harm to their businesses, particularly because all revenue generated by Defendants since January 23, 2024 comes from sales of products not accused of infringement. *See* ECF No. 63, at Casaceli Decl. Defendants further explain how the amounts included in the sales data spreadsheet were determined. *Id.* Rather than address how this data impacts the current asset freeze, Plaintiff asks the Court to ignore it.

Plaintiff first argues the Court should disregard the evidence because it contains "nothing new." Not so. The evidence demonstrates that new, substantial amounts are being frozen that far exceed the appropriate scope of what is reasonably necessary to secure any future equitable relief, not to mention the irreparable business harm to Defendants, broken down as follows:

| Defendant | Revenues on Accused Sales[1] | Amount Frozen (as of 2/1/24)[2] | Amount Frozen (as of 3/11/24)[3] |
|---|---|---|---|
| ███████████████████████████████████████████████████████ | | | |

As shown above, when Defendants filed their Motion to Dissolve or Modify the TRO on February 7, 2024, the amount frozen across Defendants' Temu accounts was roughly ███████. Now, the amount frozen has quadrupled to roughly ███████—more than *twelve* times the revenue generated by the accused products. This increase of roughly ███████ is solely from non-accused sales, which is supported by the fact that sales of accused products ceased in January. Consequently, this amount should not be subject to an asset freeze and is illustrative of the outsize effect of an indefinite total asset freeze when the accused sales revenue is known.

Plaintiff further argues the Court should disregard the evidence because it purportedly "could have been sought previously" by Defendants. ECF No. 67 at 3. That is both false and not the correct standard. The four-fold increase in the frozen amount occurred post-briefing on the

---

[1] ECF No. 62-1 – Casaceli Decl., Ex. A, Sheet 2.
[2] ECF No. 62-2 – Casaceli Decl., Ex. B
[3] ECF No. 62-3 – Casaceli Decl., Ex. C
[4] As Defendant Nos. 8 and 9 are separate companies, and in the interest of ensuring clarity and accuracy, the data for these defendants is presented discretely, instead of consolidated, as it was in ECF No. 31.

original Motion to Dissolve or Modify the TRO. Moreover, as the Seventh Circuit has held, "availability" should be interpreted broadly, and not focus on whether the evidence was "technically available" before the entry of judgment. *In re Prince,* 85 F.3d 314, 324 (7th Cir. 1996). Accordingly, courts may alter or amend an order under Rule 59(e) based on newly obtained evidence even if it could have been previously available to the moving party.

In *Prince*—which Defendants cite in their Motion and Plaintiff does not address—the Seventh Circuit held that evidence is "new" for Rule 59(e) purposes where a party did not have reason to know that a particular issue would be relevant to its case before entry of final judgment. *Id.* There, the court held that evidence presented for the first time on a Rule 59(e) motion was "effectively unavailable . . . prior to the entry of judgment" because "the parties did not have sufficient indication prior to the hearing that . . . interim income would be a relevant issue." *Id.* Here, too, Defendants did not anticipate the questions raised in the Court's order about the reliability of the sales data produced by Temu, in large part because Plaintiff had never disputed the data. Defendants now offer a custodial declaration from third-party Temu's in-house counsel, an officer of the court, which addresses "how the figures contained in the [sales data] spreadsheet were determined" to authenticate the sales data already in the record. Accordingly, Defendants' Motion presents newly obtained evidence that the Court may consider under Rule 59(e).

Plaintiff next argues the Court should not reduce the asset freeze because "there is a substantial risk that the Defendants—who are now confirmed to be located exclusively outside the United States—will divert their funds and make it all but impossible for Roadget to obtain relief." ECF No. 67 at 4. Plaintiff provides no evidentiary or legal support for this argument. Defendants have appeared in this action to defend it on the merits, and an amount that is more than what is necessary to secure a judgment—revenues for sales of the accused products—will remain frozen

even if Defendants' requested relief is granted.[5] *See Awareness Ave. Jewelry LLC v. Schedule A*, 2023 WL 3568387, at *2 (M.D. Fla. May 19, 2023) ("The amount of funds in their accounts, the minimal profits they have obtained from the alleged infringement, and the fact that they have appeared by counsel in this lawsuit to respond to the complaint, all suggest that they will have funds to pay a judgment for disgorgement of profits if one is ultimately entered.").

## B. The Court Should Disregard Plaintiff's Challenges to the Data Produced by the Third-Party Platform.

Plaintiff also argues the new evidence is unreliable because it came from third-party Temu. ECF No. 67 at 4 ("At the moment, the only evidence of revenue that has been obtained is the data provided by Temu. . . . [T]here are questions about the reliability of the Temu-provided data"). Yet Plaintiff's suggested requirement that reduction of an asset freeze requires sales data derived solely from a Defendant's own internal records finds no support in the Copyright Act or case law. For this reason alone, the Court should reject Plaintiff's challenge to the reliability of Temu's data.

Plaintiff also proactively requested sales data from third-party Temu to aid in its case. ECF No. 24 (granting Plaintiff's TRO, including its request that Temu "provide to Roadget expedited discovery … sufficient to determine … the nature of Defendants' operations and all associated sales" and various other sales data). Moreover, Plaintiff previously opposed Defendants' Motion to Sever on the basis that "[t]here is evidentiary overlap, because the evidence of infringement comes from one website[,] Temu and the **seller data comes from one third party[,] Temu**." ECF No. 65 at 7 (parentheses omitted). And Plaintiff has relied on the Defendants' sales data produced by third-party Temu to make other substantive arguments in this case. Chari Decl. iso Mot. for PI,

---

[5] It strains credulity for Plaintiff to argue it will be harmed irreparably by an asset freeze limited to revenues, particularly when revenues are the theoretical maximum of equitable relief it may possibly obtain (i.e., disgorgement of profit where "profit" is burdened by no cost reduction whatsoever). *Accord* ECF No. 31 at 5-6 (case law limits prejudgment restraint of assets to what may be recovered in equity, i.e., profits; thus, reduction of freeze to accused revenues is more than sufficient to preserve Plaintiff's equitable relief in this case).

ECF No. 38-1 at ¶¶ 5–7 (relying on "Temu Seller Data Spreadsheet" to support various data points in the Motion for PI); ECF No. 40 at 13 (arguing in the alternative to a full asset freeze: "Roadget requests a limited reduction in the asset freeze to three times the asserted amount of revenue attributable to infringing sales until it can conduct discovery into the full extent of Defendants' infringement"). Nothing about the data has changed since Plaintiff made these representations.

Further, as Defendants showed in their Motion, Plaintiff already has acknowledged the reliability of the sales data produced by Temu in analogous proceedings. For example, Plaintiff stipulated to a reduction of the asset freezes in two other cases against similarly situated defendants based on the same data from Temu. *See* No. 23-cv-17036, ECF No. 63 (reducing asset freeze according to sales data produced by third-party Temu); No. 23-cv-16262, ECF Nos. 58, 61 (same).

Plaintiff also speculates that there *may* be other allegedly infringing products Plaintiff has not identified in its Complaint. ECF No. 67 at 5. The Court should reject this unsupported theory. Plaintiff defined the scope of the accused products in its Complaint; the Good IDs come directly from the URLs listed as the accused "Product Link(s)" in its Complaint and were included in Temu's data production.[6] Plaintiff may not now argue against a freeze reduction by complaining its pre-suit investigation was incomplete or that Defendants, the Court, or third-party Temu must guess which unidentified listings Plaintiff imagines it might accuse in the future. Plaintiff has framed its copyright infringement claims around the products accused of infringement, and only those products. Its argument that a hold on *all* of Defendants' assets regardless of their connection to the accused products is based on mere speculation, and, as such, is unpersuasive.

---

[6] *Compare* ECF No. 1 at Schedule A (Defendant No. 1's accused product link found at https://www.temu.com/funny-skeleton-printboys-creative-t-shirt-casual-lightweight-comfyshort-sleeve-tee-tops-kids-clothes-for-summer-g-601099524866333.html), *with* ECF No. 62-2 at Casaceli Decl. at Ex. A, Sheet 2 (Temu data produced on Good ID 601099524866333).

### III. <u>CONCLUSION</u>

Defendants respectfully request that the Court alter or amend the Order and reduce the asset freeze consistent with the [Proposed] Order Modifying Asset Freeze previously submitted, reducing the asset freeze to Defendants' gross sales revenue from the accused products.

Dated: April 10, 2024                                           Respectfully submitted,

                                                                        /s/ Christopher J. Fahy
                                                                        Christopher J. Fahy
                                                                        ARCH & LAKE LLP
                                                                        203 N. LaSalle St., Ste. 2100
                                                                        Chicago, IL 60601
                                                                        Phone: 312-558-1369
                                                                        Fax: 312-614-1873
                                                                        Christopher@archlakelaw.com

                                                                        *Counsel for Defendants*

                                                                        Haoyi Chen
                                                                        ARCH & LAKE LLP
                                                                        2500 Wilcrest Dr.
                                                                        Houston, Tx 77042
                                                                        Phone: 346-335-9870
                                                                        Fax: 312-614-1873
                                                                        haoyichen@archlakelaw.com

                                                                        *Counsel for Defendants*
                                                                        *Pro hac vice forthcoming*


                                                                        William W. Flachsbart
                                                                        DUNLAP BENNETT & LUDWIG
                                                                        333 N. Michigan Ave. Suite 2700
                                                                        Chicago, Illinois 60601
                                                                        Phone: 312-551-9500
                                                                        wflachsbart@dbllawyers.com

                                                                        *Counsel for Defendants*